# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| MIAMI VALLEY FAIR HOUSING CENTER, INC., | : | |
| | : | Case No. 3:10cv00230 |
| Plaintiff, | | |
| | : | Magistrate Judge Sharon L. Ovington |
| vs. | | (By full consent of the parties) |
| | : | |
| CAMPUS VILLAGE WRIGHT STATE, LLC, et al., | : | |
| Defendants. | : | |

## DECISION AND ENTRY

## I.      BACKGROUND

Plaintiff Miami Valley Fair Housing Center, Inc. ("MVFHC") is a private, nonprofit organization incorporated under the laws of Ohio and located in Dayton, Ohio. Its mission is to eliminate housing discrimination based on race, color, religion, national origin, sex, disability, familial status, or any other characteristic protected under federal, state, or local laws.  To further its goals, MVFHC provides counseling, guidance, and support to individuals who encounter discrimination in their search for housing.  This may include investigation of their complaints.  MVFHC also engages in activities designed to encourage fair housing practices by educating consumers about their housing rights and housing professionals about their responsibilities under the FHA. (Doc. #33 at 3).

Plaintiff alleges that Defendants Campus Village Wright State, LLC; Campus Village Toledo, LLC; Campus Village Management, LLC; SAF Construction Services, LLC; and Cole + Russell Architects, Inc. designed, built, and/or operated the apartment complex known as Campus Village at Cimarron Woods ("Cimarron Woods") in a manner that fails to provide disabled individuals with full access to, and use of, the apartment complex facilities in violation of the Fair Housing Act ("FHA"), 42 U.S.C. § 3601, et seq. (*Id.* at 1-2).  Plaintiff alleges it has suffered harm as a result of Defendants' actions. Specifically, Plaintiff claims the alleged violations have cause it "to divert its scarce resources in an attempt to redress these violations, and frustrated [its] mission." (*Id.* at 2). Defendant Campus Village Wright State, LLC, also doing business as Cimarron Woods, is a Michigan LLC registered to do business in Ohio with its principal place of business at 919 West University Drive, Suite 700, Rochester, Michigan.  It is the owner of Cimarron Woods.  (*Id.* at 3).

Defendant Campus Village Toledo, LLC, also doing business as Campus Village Communities, is a Michigan LLC registered to do business in Ohio with its principal place of business at 200 Diversion St., Suite 220, Rochester Hills, Michigan.  It operates, manages, promotes, and sets policy for Cimarron Woods, among other places.  It has been, and continues to be, engaged in the development of apartment buildings covered by the FHA including, but not limited to, Cimarron Woods. (*Id.* at 4).

Defendant Campus Village Management, LLC, also doing business as Campus Village Communities, is a Michigan LLC doing business in Ohio with its principal place

2

of business at 919 West University Drive, Suite 700, Rochester, Michigan. It operates, manages, promotes, and sets policy for Cimarron Woods, among other places. It has been, and continues to be, engaged in the development of apartment buildings covered by the FHA including, but not limited to, Cimarron Woods. (*Id.*).

Defendant SAF Construction Services, LLC is a Michigan LLC doing business in Ohio with its principal place of business at 919 West University Drive, Suite 700, Rochester, Michigan. Campus Village Wright State, LLC promotes SAF as part of the "Campus Village Communities team." SAF, a contractor, participated in the construction of Cimarron Woods. (*Id.* at 4-5).

Defendant Cole + Russell Architects, Inc., ("C+R") is an Ohio corporation with its principal place of business at 537 East Pete Rose Way, Suite 200, Cincinnati, Ohio. It has been, and continues to be, engaged in providing architectural services for apartment buildings covered by the FHA including, but not limited to, Cimarron Woods. (*Id.* at 5).

Defendants Campus Village Wright State, LLC; Campus Village Toledo, LLC; Campus Village Management, LLC; and SAF Construction Services, LLC generally deny the allegations set forth in Plaintiff's First Amended complaint (Doc. #36 at 1). They have filed a Cross-Claim against C+R, asserting two Counts: Indemnification and Contribution.[1] (*Id.* at 6-7). Campus Village Cross-Claimants seek "indemnification against Cole + Russell to the extent that Campus Village Cross-Claimants are held liable

---

[1] Defendants Campus Village Wright State, LLC; Campus Village Toledo, LLC; Campus Village Management, LLC; and SAF Construction Services, LLC are hereafter referred to collectively as "Campus Village Cross-Claimants."

to Plaintiff, and for any related damages, attorney's fees, expenses, and cost incurred by the Campus Village Cross-Claimants as a result." (*Id.* at 6). Campus Village Cross-Claimants also seek "contribution against Cole + Russell to the extent that the Campus Village Cross-Claimants are held liable to Plaintiff." (*Id.* at 7).

Campus Village Cross-Claimants assert that C+R "had exclusive design and architectural responsibility concerning Cimarron Village, and in that capacity had the duty to the Campus Village Cross-Claimants, under common law and/or contract, to assure that the subject property was designed in accordance with and in compliance with applicable legal requirements." (*Id.* at 6).

C+R now requests the Court dismiss both Cross-Claims – under theories of contribution and indemnification – brought by Campus Village Cross-Claimants. (Doc. #45 at 7). C+R contends dismissal is warranted because the FHA preempts both counts raised in the Cross-Claim. (*Id.* at 1). C+R argues this conclusion is supported by this Court's decision in *Miami Valley Fair Housing Center, Inc., v. Steiner & Associates, Inc., et al.*, 2010 WL 2631110 (2010). This case is now before the Court upon C+R's Motion for Judgment on the Pleadings (Doc. #45), Campus Village Cross-Claimants' Response in Opposition (Doc. #49), C+R's Reply (Doc. #50), and the record as a whole.

## II.     MOTION FOR JUDGMENT ON THE PLEADINGS

C+R contends it is entitled to judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).

4

"The standard of review for a Rule 12(c) motion is the same as for a motion under Rule 12(b)(6) for failure to state a claim upon which relief can be granted." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010). "[A]ll well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment. A motion brought pursuant to Rule 12(c) is appropriately granted 'when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law.'" *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008) (also discussing, in part, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)).

When reviewing a Complaint under both Rule 12(c) and Rule 12(b)(6), the Court accepts as true the Complaint's factual allegations and construes all reasonable inferences in the plaintiffs' favor. *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009). To survive a Rule 12(b)(6) Motion, the Complaint "must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1974, 1965 (2007)).

To state a plausible, non-speculative claim the Complaint need only set forth a short and plain statement of the claim showing that the plaintiff is entitled to relief. *See* Fed. R. Civ. P. 8(a). This does not require detailed factual allegations, yet it does require

"more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677, 129 S.Ct. 1937, 1949 (2009)(*Twombly* citations omitted); *see Eidson v. State of Tn. Dept. of Children's Svs.*, 510 F.3d 631, 634 (6th Cir. 2007)("[A] complaint must contain either direct or inferential allegations respecting all material elements to sustain recovery under some viable legal theory.… Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice.").

## III.   ANALYSIS

### A.   <u>Indemnification or Contribution Under the FHA</u>

C+R contends that Campus Village Cross-Claimants' claims asserting derivative liability for violations of the FHA fail as a matter of law and are preempted by the FHA. C+R reasons that in the context of the FHA, no claim for indemnity or contribution exists as a matter of law, and consequently, no derivative liability can be asserted for another's FHA violation. As noted previously, this contention is based on this Court's decision in *Miami Valley Fair Housing Center, Inc. v. Steiner & Associates, Inc., et al.*, 2010 WL 2631110 (2010).

The purpose of the FHA is "to provide . . . for fair housing throughout the United States." 42 U.S.C. § 3601. The FHA was "enacted to ensure the removal of artificial,

arbitrary and unnecessary barriers when the barriers operate invidiously to discriminate

on the basis of impermissible characteristics." *United States v. City of Parma*, 494

F.Supp. 1049, 1053 (N.D. Ohio 1980). The United States Court of Appeals for the Fourth

Circuit has provided a very comprehensive overview of the purpose and individual

responsibilities under the FHA, which this Court finds persuasive. The Fourth Circuit

explained:

> The primary purpose of the FHA is 'to provide … for fair housing
> throughout the United States.' 42 U.S.C. § 3601. Furthermore, compliance
> with the … FHA … is 'non-delegable' in that an owner cannot 'insulate
> himself from liability for…discrimination in regard to living premises
> owned by him and managed for his benefit merely by relinquishing the
> responsibility for preventing such discrimination to another party.' Under
> these principles, it is clear that … the regulatory purpose of the FHA …
> would be undermined by allowing a claim for indemnity.
>
> ... Allowing an owner to completely insulate itself from liability for an …
> FHA violation through contract diminishes its incentive to ensure
> compliance with discrimination laws. If a developer of apartment housing,
> who concededly has a non-delegable duty to comply with the … FHA, can
> be indemnified under state law for its … FHA violations, then the developer
> will not be accountable for discriminatory practices in building apartment
> housing. Such a result is antithetical to purposes of the FHA.
> Accordingly…, Archstone's [developers/owners'] indemnification claims
> are preempted.

*Equal Rights Center v. Niles Bolton Associates*, 602 F.3d 597, 602 (4th Cir. 2010)

(quoting, in part, *Walker v. Crigler*, 976 F.2d 900, 904 (4th Cir. 1992)). This reasoning is

well grounded, sound, and consistent with a well-researched decision by a United States

District Court in Tennessee. *United States v. Murphy Development, LLC*, 2009 WL

3614829 at *1 (M.D. Tenn., Oct. 27, 2009). The District Court in *Murphy Development*

observed, '[t]he federal courts that have considered the question … are in universal agreement that there is no express or implied right to indemnity under the FHA …" *Id.*, 2009 WL 3614829 at *1 (*citing United States v. Quality Built Constr., Inc.*, 309 F. Supp.2d 767, 778-779 (E.D.N.C. 2003); *United States v. Shanrie Co.*, 610 F.Supp.2d 958, 960-961 (S.D. Ill. 2009); *Mathis v. United Homes, LLC*, 607 F.Supp.2d 411, 421-423 (E.D.N.Y. 2009); *Equal Rights Ctr. v. Archstone Smith Trust*, 603 F.Supp.2d 814, 821-822 (D.Md. 2009); *Sentell v. RPM Mgt. Co.*, 2009 WL 2601367 at *4 (E.D. Ark. Aug. 24, 2009); *United States v. Gambone Bros. Dev. Co.*, 2008 WL 4410093 at **7-9 (E.D. Pa. Sept. 25, 2008); *Access 4 All, Inc. v. Trump Int'l Hotel and Tower Condominium*, 2007 WL 633951 at **6-7 (S.D.N.Y. Feb. 26, 2007)).  Further considering the FHA, the District Court in *Murphy Development* wrote, "there is nothing in the legislative history of the FHA which states or implies such a right to contribution or indemnity.  The comprehensive character of the FHA precludes a finding that a federal common law right to indemnity and/or contribution exists under the FHA."  *Murphy Development*, 2009 WL 3614829 at *1 (relying on *Quality Built Constr.*, 309 F.Supp.2d at 779 and *Mathis*, 607 F.Supp.2d at 413).

These cases have persuasive effect given the validity of the analysis set forth and the non-existence of directly contrary cases.  *See Niles Bolton*, 602 F.3d 597 at 602; *see also Murphy Development*, 2009 WL 3614829 at *1 (and cases cited therein); *Mathis*, 607 F.Supp.2d at 421-423 (Fair Housing Act does not provide for an express or implied

right to contribution or indemnification, and there is no federal common law for such claims).

Campus Village Cross-Claimants urge this Court not reach the same conclusions reached in *Steiner*. Campus Village Cross-Claimants contend that their indemnification claim would not insulate them from liability to Plaintiff and that the FHA does not prevent them from seeking state indemnification and contribution claims against C+R. (Doc. #49 at 2-3). They further contend that adhering to the *Steiner* ruling would render a broad range of common indemnification arrangements unenforceable (*id.* at 3-5); that *Mills v. River Terminal Railway Co.*, 276 F.3d 222 (6th Cir. 2002) supports its claims of indemnification or contribution (*id.* at 5-7); and that the present case is distinguishable from *Steiner* and therefore *Steiner* is not applicable (*id.* at 7-8).

The issue of whether or not the FHA contains an express or implied right to indemnification or contribution from third-parties was expressly addressed by this Court in *Steiner*, 2010 WL 2631110. The plaintiff in *Steiner*, Miami Valley Fair Housing Center, Inc., alleged that the defendant Steiner & Associates and several co-defendants constructed multi-family apartment buildings that failed to meet the FHA's accessibility requirements. The defendants, in turn, filed a third-party complaint against numerous entities that contributed to the construction of the apartment buildings. These sub-contractor entities became Third-Party Defendants. Steiner and other original co-defendants became Third-Party Plaintiffs, seeking indemnity and contribution for any

9

damages awarded to the Plaintiffs. Steiner (and the others) also raised reach of contract and negligence claims against the Third-Party Defendants.

The Third-Party Defendants in *Steiner* filed motions to dismiss or for judgment on the pleadings pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(c), respectively. This Court dismissed the Third-Party Plaintiffs' claims on the grounds that the FHA did not imply a right to indemnity or contribution, and the breach of contract and negligence claims substantively repeated the indemnification and contribution claims. *Steiner*, 2010 WL 2631110.

On appeal, the United States Court of Appeals for the Sixth Circuit reversed and remanded *Steiner* based on issues relating to personal jurisdiction. *Miami Valley Fair Housing Center, Inc. et al. v. Steiner & Associates, Inc. et al.*, 2012 WL 1815964 at *1 (6th Cir. May 18, 2012). The Sixth Circuit declined to address whether the FHA permits or preempts state-law claims in contribution or indemnification. *Id.*

The Court again finds the cases cited in *Steiner*, 2010 WL 2631110 to be persuasive and finds that the FHA does not authorize claims for indemnification or contribution. *See Niles Bolton*, 602 F.3d at 602; *see also Murphy Development*, 2009 WL 3614829 at *1 (and cases cited therein); *Mathis*, 607 F.Supp.2d at 421-423. As this Court stated in *Steiner*, only the United States Court of Appeals for the Fourth Circuit has expressly addressed the issue of whether the FHA provides a claim for indemnification. The Fourth Circuit concluded that the FHA does not provide a claim for indemnification. This Court continues to agree with the Fourth Circuit's analysis and conclusion.

10

Nonetheless, Campus Village Cross-Claimants contend that allowing them to pursue indemnification against C+R would not insulate them from liability to Plaintiff and the FHA does not prevent them from seeking state indemnification and contribution claims against C+R. (Doc. #49 at 2-3). This assertion is somewhat dubious, however, in light of Campus Village Cross-Claimants' request "to indemnify and *hold Campus Village Cross-Claimants harmless* in the event that Plaintiff should prevail to any extent in this matter." (Doc. #36 at 7) (emphasis added). Nevertheless, this Court finds Campus Village Cross-Claimants' argument unpersuasive.

The argument that allowing Campus Village Cross-Claimants to pursue indemnification against C+R would somehow not insulate them from liability is not supported by *Niles Bolton* or *Steiner*. If this Court were to allow Campus Village Cross-Claimants to pursue indemnification and contribution claims against C+R, Campus Village Cross-Claimants could indeed be insulated from liability.

What Campus Village Cross-Claimants essentially argue is that while they may not have to pay any damages to the Plaintiff, they would still have a judgment entered against them. Yet if parties, such as Campus Village Cross-Claimants, could insulate themselves from financial ramifications for violations of the FHA, what incentive would remain for any party – aside from perhaps an architect or architectural design firm – to ensure compliance with the FHA. Such a result would only tend to frustrate the purpose of the FHA. Accordingly, Campus Village Cross-Claimants' argument lacks merit.

11

Campus Village Cross-Claimants' contention that the FHA does not prohibit them from pursuing indemnification and contribution claims under Ohio law also lacks merit. The Court finds such state law claims preempted under the doctrine of obstacle preemption. Obstacle preemption applies "where state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Niles Bolton*, 602 F.2d at 601 (internal citations omitted). The United States Supreme Court has found state law claims preempted under obstacle preemption where a state-law claim, "interferes with the methods by which the federal statute was designed to reach [its] goal." *Id.* As stated above, an owner/operator of a residence cannot shift responsibility for preventing violations of the FHA onto another party, *id.* at 602, nor does the FHA recognize the right of indemnification or contribution. *Murphy Development*, 2009 WL 3614829 at *1 (relying on *Quality Built Constr.*, 309 F.Supp.2d at 779 and *Mathis*, 607 F.Supp.2d at 413).

Allowing Campus Village Cross-Claimants to seek indemnification or contribution under Ohio law from C+R would, in effect, completely insulate them from liability, as C+R would be the one to incur a financial burden in the event Plaintiff prevails on its FHA claims. This outcome is contrary to the goal of the FHA – namely to provide fair housing in the United States. 42 U.S.C. § 3601. Because allowing state-law remedies would interfere with the methods the FHA uses to achieve its goal, such claims are preempted under the obstacle preemption doctrine.

12

Campus Village Cross-Claimants also contend that following the *Steiner* ruling would render a broad range of common indemnification arrangements unenforceable. (Doc. #49 at 3-5). Campus Village Cross-Claimants refer to several other types of indemnification agreements, including insurance contracts, Professional Employer Organizations indemnification agreements, and indemnification agreements between employers and their agents/employees. (*Id.* at 4-6). Campus Village Cross-Claimants argue that the real issue in the present case is "not whether the FHA provides for indemnification under Federal law. Rather, the question is whether the FHA somehow precludes claims based upon these and other types of common indemnification arrangements." (*Id.* at 5). This is incorrect.

The main underlying issue in the present case is whether the FHA provides for indemnification or contribution. For the above reasons, the Court concludes it does not. Moreover, Campus Village Cross-Claimants raise a slippery-slope argument that is not persuasive. The situations (insurance contracts, etc.) involving other indemnity arrangements – the slippery slope Campus Village Cross-Claimants point to – do not involve issues analogous to issues arising under the FHA or to the FHA's anti-discrimination goals. Consequently, the lack of indemnification or contribution in the present FHA context says nothing about whether indemnification or contribution are warranted in other contexts.

Campus Village Cross-Claimants further contend that *Mills v. River Terminal Railway Co.*, 276 F.3d 222 (6th Cir. 2002) provides support for their claims of

13

indemnification or contribution.  (*Id.* at 5-7).  Campus Village Cross-Claimants also rely

on *Parsons v. Sorg Paper Co.*, 942 F.2d 1048 (6th Cir. 1991) to support this contention.

(*Id.* at 3).  Both *Mills* and *Parsons*, however, involve the Federal Employer's Liability

Act (FELA).  While FELA is an important federal statute, it is dissimilar from the FHA.

Thus, *Mills* and *Parsons* are not instructive about whether the FHA permits or preempts

indemnification or contribution.

      An important distinction between these Acts are that the goals of the FHA – like

the goals of the Americans with Disabilities Act (ADA) – are "regulatory rather than

compensatory."  *Niles Bolton*, 602 F.3d at 602.

> The principal purpose of the ADA is to "(1)…provide a clear and
> comprehensive national mandate for the elimination of discrimination
> against individuals with disabilities [and] (2) to provide clear, strong,
> consistent, enforceable standards addressing discrimination against
> individuals with disabilities."  42 U.S.C. § 12101(b).  The primary purpose
> of the FHA is "to provide…for fair housing throughout the United States."
> 42 U.S.C. § 3601.

*Id.*  On the other hand, the principle purpose of FELA is to protect and compensate

railroad workers injured on the job. 45 U.S.C. § 51, et seq.  FELA is thus primarily

compensatory – as opposed to regulatory – in nature.

      The key question here is whether the purpose of the FHA would be frustrated or

impeded by allowing Campus Village Cross-Claimants to seek indemnification or

contribution from C+R.  The Court concludes that it would.  The FHA and FELA have

two very different purposes: the FHA's purpose is one of regulation; FELA's is one of

compensation.  And it would be contrary to the purposes of the FHA to allow a

14

wrongdoer to shift the entire blame to another party because it would allow the wrongdoer to become unaccountable for discriminatory building practices. *Steiner*, 2010 WL 2631110 at *3.

On the other hand, allowing indemnification under the FELA would not defeat the purposes of that statute because the injured party would still be compensated, one way or another. The differences between primary and secondary liability described by the Sixth Circuit in *Mills* are therefore valid for a claim under FELA. *Mills*, 276 F.3d at 226. They do not, however, extend to claims under the FHA where the parties have a non-delegable duty to ensure that no discrimination occurs. *Steiner*, 2010 WL 2631110 at *3.

Furthermore, it should be remembered that C+R is named not only as a Third-Party Defendant but also as an original Defendant in the present case. C+R therefore also faces potential liability to Plaintiff for any FHA violation. D+R would not, therefore, escape financial sanction absent the Cross-Claim. Furthermore, Campus Village Cross-Claimants "are clearly not among the class which [the FHA] is intended to protect, but are parties whose conduct the statute is intended to regulate."[1] *Steiner*, 2010 WL 2631110 at *5. For the foregoing reasons, *Mills* and *Parsons* are distinguishable from the present case.

Lastly, Campus Village Cross-Claimants urge that the circumstances of the present case are distinguishable from *Steiner*, thus rendering *Steiner* inapplicable and non-

---

[1] Knowledge about who the FHA is designed to protect can be gained, in part, by consulting 42 U.S.C. §3602(d), (i), (defining, respectively, "person" and "[a]ggrieved person") and 42 U.S.C. §3604(f) (prohibiting various acts of housing discrimination against such persons).

15

precedential. (Doc. #49 at 7-8). Campus Village Cross-Claimants argue that *Steiner* involved "an effort to bring in additional third parties in order to pass liability from the FHA defendants to other entities against which the plaintiffs had asserted no FHA claims" while the present case involves a cross-claim between existing FHA defendants. (*Id.* at 7). Campus Village Cross-Claimants cite the liberal pleading standard of Federal Rule of Civil Procedure 13, namely that a cross-claim may be raised if it arises out of the same transaction or occurrence as the original complaint. (*Id.* at 7-8).

Although Campus Village Cross-Claimants' reading of the applicable rule is correct, it misses the underlying point. Campus Village Cross-Claimants wish to shift the entirety of the FHA liability to C+R. As stated above, this is antithetical to the purpose behind the FHA. In fact, *Niles Bolton* involved a cross-claim issue and the Fourth Circuit found no implied or express right of indemnification existed. *See Niles Bolton*, 602 F.3d 597. This Court continues to find the Fourth Circuit's analysis and rationale in *Niles Bolton* sound and sees no reason to deviate from its prior decision on these issues in *Steiner.*

Accordingly, because the FHA does not authorize Campus Village Cross-Claimants' express or implied claims for indemnification or contribution, Campus Village Cross-Claimants may not point the finger of their FHA liability, if any, at C+R.

## B.      State Law Claims: Breach of Contract and Negligence

Although Campus Village Cross-Claimants do not specifically bring independent breach of contract or negligence claims, the language of their Cross-Claim indicates they wish to do so.  The Cross-Claim states that C+R "had a duty to Campus Village Cross-Claimants, under common law and/or contract, to assure that the subject property was designed in accordance with and in compliance with applicable legal requirements." (Doc. #36 at 6).  Therefore, this Court will address both claims.

There is a distinction between (1) a state-law claim seeking indemnification or contribution stemming from proven FHA violations and (2) a state-law contract claim arising from breach of a duty imposed by the particular terms of a contract, rather than duties imposed by the FHA; or a state law negligence claim based on a standard of care not imposed by the FHA.  *See Quality Built Constr.*, 309 F.Supp.2d at 778-779.  This distinction hinges on whether the breach of contract or negligence claims are in substance reiterations of claims seeking indemnification or contribution for proven FHA violations. For example, the District Court in *Quality Built Constr.* determined that the FHA did not support the defendant/builder's claim for indemnification from a co-defendant (an architectural design firm) to the extent the need for indemnification arose from the defendant/builder's FHA violations.  *Id.*  Yet the District Court also determined that defendant/builder raised "distinct state law claims…," for breach of contract and breach of standard of care, "which may allow for some form of contribution from [the co-defendant architectural firm]."  *Id.* at 779.  The Fourth Circuit Court of Appeals drew this same distinction, characterizing the state law breach of contract and negligence claims at

17

issue "to be de facto indemnification claims and, thus, preempted." *Niles Bolton*, 602 F.3d at 602.  This Court agrees with the stated rationale.

The existence of this distinction helps Campus Village Cross-Claimants avoid dismissal of their state law claims for breach of contract and negligence, but only to the extent that those claims are not *de facto* indemnification or contribution claims arising from Campus Village Cross-Claimants' FHA violation(s), if any violation is proven.  *See id.*; *see also Quality Built Constr.*, 309 F.Supp.2d at 779.  Campus Village Cross-Claimants' Cross-Claim must therefore be examined to determine whether it raises distinct state-law claims for breach of contract or negligence, or instead *de facto* claims for indemnification and/or contribution arising from FHA violations.

An examination of Campus Village Cross-Claimants' Cross-Claim reveals some general factual allegations.  The Cross-Claim asserts, "Cole + Russell had exclusive design and architectural responsibility concerning Cimarron Village, and in that capacity had the duty to Campus Village Cross-Claimants, under common law and/or contract, to assure that the subject property was designed in accordance with and in compliance with applicable legal requirements."  (Doc. #36 at 6).  The Cross-Claim further asserts, "to the extent that any violations of applicable fair housing laws have occurred, such violations are the fault of Cole + Russell in negligently failing to design the subject property in accordance with and in compliance with applicable legal requirements and the requisite standard of care."  (*Id.* at 6).

Applying the current pleading standards, *see Iqbal*, 556 U.S. at 677; *see also Tackett*, 561 F.3d at 488, this Court finds Campus Village Cross-Claimants' Cross-Claim fails to state a breach of contract claim because the allegations are merely recitations of the FHA violation.  The Cross-Claim refers to a duty to "assure that the subject property was designed in accordance with and in compliance with applicable legal requirements." (*Id.* at 6).  While the Cross-Claim is sufficient to establish a specific cause of action (i.e., that there was a duty to design the subject property in accordance to federal fair housing law), this does not create a state law claim for breach of contract that is distinct from the FHA violation.  Campus Village Cross-Claimants' Cross-Claim does not distinguish between a state law breach of contract or negligence claim and a claim for indemnification or contribution arising from FHA violations.  That distinction could only be drawn by speculating about what C+R allegedly did, or did not do, to expose them to liability for breach of contract or negligence unrelated to FHA violations and any resulting indemnification or contribution.  Because of this need for speculation, Campus Village Cross-Claimants' Cross-Claim does not allege sufficient facts to set forth a plausible state law claim for breach of contract that is distinct from a claim seeking indemnification or contribution for FHA violations.  *See Tackett*, 561 F.3d at 488 (and cases cited therein).

Campus Village Cross-Claimants' negligence claim suffers from the same plausibility flaw:  it raises negligence claims without identifying a single act or omission by the Third-Party Defendant that supports these claims or distinguishes these claims

19

from its claims seeking indemnification or contribution due to FHA violations. (Doc. #36 at 6-7).

This Court agrees that Campus Village Cross-Claimants' Cross-Claim was appropriately brought under Federal Rule of Civil Procedure 13. That rule does allow such a claim to be brought if it "arises out of the transaction or occurrence that is the subject matter of the original action or of a counterclaim, or if the claim relates to any property that is the subject matter of the original action." Fed. R. Civ. P. 13(g). However, such a claim must still rest on grounds that are independent of the FHA claim. This is not the situation here. Although Campus Village Cross-Claimants may argue that they merely seek to enforce the duties owed to them by C+R, this argument fails because what Campus Village Cross-Claimants really seek is to have C+R pay all claims that arise under the FHA violations, if any. *See Niles Bolton*, 602 F.3d at 602.

Accordingly, Counts I and II of Campus Village Cross-Claimants Cross-Claim fail as a matter of law to the extent they assert *de facto* claims for indemnification or contribution arising from C+R's FHA violations, if any. Counts I and II also fail to raise a distinct and plausible state law claim for breach of contract or negligence. Counts I and II are also subject to dismissal to the extent they raise state law claims that are independent from, and not dependent upon the outcome of, the original claims raised by Plaintiff.

## IV.    CONCLUSION

20

Based on the foregoing, Cole + Russell Architects, Inc.'s Motion for Judgment on the Pleadings (Doc. #45) is well taken.

## IT IS THEREFORE ORDERED THAT:

1.    Cole + Russell Architects, Inc.'s Motion for Judgment on the Pleadings (Doc. #45) is GRANTED;

2.    Counts I and II of Campus Village Cross-Claimants' Cross-Claim (Doc. #36) are DISMISSED; and,

3.    The case remains pending on the docket of this Court.


September 26, 2012                         ___s/Sharon L. Ovington____
                                          Sharon L. Ovington
                                          United States Magistrate Judge

21